IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RENEE GALLOWAY,
        Plaintiff,

v.                                                                   Civil Action No. 3:19-cv-209

PRIORITY IMPORTS RICHMOND, LLC,
d/b/a PRIORITY TOYOTA RICHMOND,
        Defendant.

## **OPINION**

In May, 2018, Renee Galloway bought a new car from Priority Toyota Richmond, LLC ("Priority"). A few weeks later, Priority forced her to come back to the dealership and choose between agreeing to higher interest rates or returning her car. Galloway has sued Priority for violating federal and state consumer protection laws. Priority has moved to dismiss for lack of subject matter jurisdiction, or alternatively, to compel arbitration. The Court heard argument on the motion on August 7, 2019. Following the hearing, the Court granted the motion in part and required the parties to attend mediation before the Better Business Bureau ("BBB"). The parties did not resolve the case at mediation.

On December 3, 2019, the Court held a hearing on the motion to dismiss insofar as it asks the Court to compel arbitration. Galloway argues that the arbitration provision violates public policy and is unenforceable because it prohibits an arbitrator from awarding punitive damages. Galloway also asks the Court to hold an evidentiary hearing regarding Priority's intent for including the provision in its contracts. Because the Court concludes that the parties entered into a valid arbitration agreement that does not violate public policy, the Court will grant the motion to dismiss and declines to hold an evidentiary hearing.

# I. FACTS ALLEGED IN THE COMPLAINT

Galloway purchased a new Toyota Camry from Priority in May, 2018. To complete the transaction, Galloway signed a retail installment sales contract ("Credit Contract") and a Buyer's Order form ("Buyer's Order"). The Credit Contract contained the financing details, and the Buyer's Order contained the arbitration agreement. The arbitration agreement provides:

> You, as Buyer(s), and Dealer agree that if any Dispute . . . arises, except as provided in this agreement, the Dispute will be resolved by binding arbitration by a single arbitrator under the applicable rules of the [Greater Hampton Roads BBB].[1] You agree that you will submit a Dispute for resolution in your individual capacity only and not as a named plaintiff or as a class member in any purported class or representative capacity. No claim arising from a Dispute (known or unknown) may be adjudicated in or be the basis for compensation as a result of any class action proceeding. The parties understand that they are waiving their rights to a jury trial and class consideration of all claims and disputes between them not specifically exempted from arbitration in this Agreement. The enforceability of this arbitration agreement shall be governed by the Federal Arbitration Act. The arbitrator's decision shall be binding on all parties and may be entered in the highest local, state, or federal court, and before any administrative body. If You are signing a retail installment sale contract or lease in connection with this transaction that contains an arbitration agreement, that arbitration agreement supersedes this agreement in any case where the retail installment sale contract or lease is implicated.

(Dk. No. 11-2, at 1). The Buyer's Order also provides:

> All costs and expenses of the alternative dispute agency and the fees of the arbitrator shall be borne by the Dealer, except if you commence arbitration then you are financially responsible for the filing fee to the extent equal to the amount for filing a civil action for the claimed amount the Circuit Court of the county or city where the Dealer is located <u>plus</u> the incremental amount of the filing fee with the alternative dispute agency for any amount claimed in excess of the purchase price of the vehicle involved in the Dispute. Each party shall be responsible for its own attorney, expert and other fees and costs, unless awarded otherwise under applicable law. The arbitrator must make a written decision with separate findings of fact and conclusions of law. The arbitrator may not award punitive damages. The arbitrator shall apply the substantive law of the state of Virginia, and the arbitration shall take place in the county or city in which the Dealer is located.

---

[1] Although the parties have discovered that Priority no longer belongs to the Greater Hampton Roads BBB, the Greater Hampton Roads BBB has agreed to arbitrate the dispute.

2

(*Id.* at 2.) The Buyer's Order sold and assigned the Credit Contract to the Toyota Motor Credit Corporation ("Toyota"), which allowed Toyota to change Galloway's financing terms.

Priority asked Galloway to return to the dealership a few weeks later to sign more paperwork. Galloway did not return to the dealership. In June, 2018, Priority again asked Galloway to return to the dealership to sign more paperwork. At the dealership, Priority told her that the original Credit Contract was invalid and that "she could not drive her Camry off the lot unless she agreed to a much higher interest rate and higher payments." (Dk. No. 11, at ¶¶ 58-59.) Galloway refused the terms of the new contract and returned the car.

On March 26, 2019, Galloway filed this lawsuit. She alleges (1) a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(a); (2) a violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d); (3) fraud; (4) a violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code. § 59.1-200; (5) a claim under 42 U.S.C. § 1983; (6) conversion; and (7) a violation of the Uniform Commercial Code ("UCC"), Va. Code § 8.9A-625.

Priority filed a motion to dismiss all counts for lack of subject matter jurisdiction, invoking the mediation and arbitration provisions of the Buyer's Order. The Court held a hearing on the motion on August 7, 2019. The Court ordered the parties to mediation and stayed the case for forty-five days. The parties did not resolve the case. On December 3, 2019, the Court held a hearing on the motion insofar as it asks the Court to compel arbitration of Galloway's claims.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") recognizes "that arbitration is a matter of contract[,] . . . [a]nd . . . courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Virginia law considers arbitration agreements "valid,

3

enforceable[,] and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract." Va. Code Ann. § 8.01-581.01. "The validity of an arbitration agreement is a 'question of arbitrability' and, in the normal course, it 'is undeniably an issue for judicial determination.'" *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 671 (4th Cir. 2016) (quoting *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012)).

Courts apply common law principles of contract interpretation when interpreting an arbitration agreement, but must give due regard to the FAA's "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001); 9 U.S.C. §§ 1-16. Parties may agree to arbitrate statutory claims. "Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Accordingly, "ambiguities as to the scope of the arbitration clause itself should be resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

Courts assess the validity of the arbitration agreement, not the contract as a whole. *See Hayes*, 811. F.3d at 671. To compel arbitration under the FAA, a litigant must show

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal . . . to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). "The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that purports

to cover the dispute." *Lovelady v. Five Star Quality Care-VA, LLC*, No. 4:18-cv-18, 2018 WL 3580768, at *7 (E.D. Va. July 25, 2018).

Here, neither party challenges whether a dispute exists that the agreement purports to cover.[2] The transaction involves the sale of a car, which relates to interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."). Galloway has refused to arbitrate the dispute. Thus, this case satisfies the four *Adkins* factors.

Instead, Galloway argues that the arbitration agreement violates public policy and is unenforceable because it limits her statutory right to recover punitive damages under federal and state consumer protection laws.[3] Galloway also requests an evidentiary hearing regarding whether Priority includes the arbitration provision to cheat customers.

### A. Waiver of Punitive Damages

When a party agrees to arbitrate, the party "does not forego the substantive rights afforded by the statute." *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 288 (4th Cir. 2007). Accordingly, a court may find an arbitration agreement invalid if it contains a "prospective waiver of a party's right to pursue statutory remedies." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). Courts have recognized, however, that "simply because judicial

---

[2] Galloway also does not dispute that the parties entered into an arbitration agreement, or that the parties could not arbitrate Galloway's claims absent the waiver. *Cf. Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, No. 19-1158 (4th Cir. Dec. 4, 2019) (published decision) (vacating and remanding a district court's denial of a motion to compel arbitration with instructions to resolve factual disputes material to whether the parties formed an agreement to arbitrate).

[3] Galloway seeks punitive damages for her ECOA, fraud, conversion, and § 1983 claims.

remedies are part of a law does not mean that Congress meant to preclude parties from bargaining around their availability." *Adkins*, 303 F.3d at 503 (discussing the waiver of the right of bring a class action under the Fair Labor Standards Act).

In general, "courts applying Virginia law to punitive damages . . . waivers have found that such waivers are valid and not unconscionable." *Lovelady*, 2018 WL 3580768, at *10 (collecting cases). Although a punitive damages waiver bars one available remedy, "it does not undermine [the] [p]laintiff['s] ability to show that" the defendant is liable for the alleged conduct and that damages "may be awarded." *Id.* at *11. These types of waivers favor a defendant, but they do not "serve as an unfair advantage that would make any resulting arbitration a sham." *Id.*

In contrast, the Fourth Circuit in *Hayes* considered the enforceability of an arbitration agreement that was "subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and . . . *no United States state or federal law.*" 811 F.3d at 670 (emphasis added). The court observed that arbitration clauses may not "prevent a prospective waiver of a party's *right to pursue* statutory remedies," but noted that "the substantive waiver prohibition does not go so far as to guarantee a procedural path that would make proving a federal statutory claim in arbitration worth the expense involved for all claimants under all circumstances." *Id.* at 675 (quotations and citations omitted). The court invalidated the agreement "for the fundamental reason that it purport[ed] to renounce wholesale the application of *any* federal law to the plaintiffs' federal claims." *Id.* at 673 (emphasis added); *see also Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 (4th Cir. 2017) (refusing to enforce an arbitration agreement that was "governed by the laws of the Otoe-Missouria Tribe of Indians and . . . not subject to the provisions or protections of the laws of [the plaintiff's] home state or any other state").

The punitive damages waiver in the Buyer's Order does not render the arbitration agreement unenforceable. Unlike the arbitration agreement here, the *Hayes* agreement affirmatively waived "all recourse available to [the plaintiff] under federal law." *Green v. Kline Chevrolet Sales Corp.*, No. 2:19-cv-127, 2019 WL 3728266, at *8 (E.D. Va. Aug. 7, 2019). The arbitration agreement in the Buyer's Order contains no such waiver. Further, the cases Galloway cites in which courts have refused to enforce arbitration provisions due to punitive damages waivers did not involve the same statutory or Virginia state law claims as the claims at issue here. Although the agreement limits one of the remedies available to her, Galloway remains free to pursue all of her claims in arbitration.[4] Accordingly, the arbitration agreement is not against public policy.

### B. Evidentiary Hearing

The FAA requires courts to send referable issues to arbitration "*upon being satisfied* that the issue involved . . . is referable to arbitration." *Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958, 961 (W.D. Va. 2000) (quoting 9 U.S.C. § 3 (emphasis added)). Determining whether to refer an issue to arbitration may require the Court to hold "a hearing with a restricted inquiry into factual issues." *Id.* (citing *Moses H. Cone Mem. Hosp.*, 460 U.S. at 22). The party seeking the hearing "must make an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). Importantly, the parties must raise "genuine issues of material fact regarding the existence of an agreement to arbitrate." *Id.*

---

[4] Because the Buyer's Order provides that the arbitrator will apply Virginia state law, the arbitrator can also apply federal law. *Id.*

Galloway seeks an evidentiary hearing on Priority's intent for including arbitration clauses in their Buyer's Orders. Galloway contends that Priority uses these arbitration agreements as a claim suppression device, which "is both substantively unconscionable and a willful violation of the VCPA." (Dk. No. 15, at 21.)

### *1. Unconscionability*

Unconscionability has two elements: procedural unconscionability and substantive unconscionability. *Lee v. Fairfax Cty. Sch. Bd.*, 621 F. App'x 761, 763 (4th Cir. 2015). Procedural unconscionability involves "an absence of meaningful choice on the part of one of the parties." *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 292-93 (4th Cir. 1989). Substantive unconscionability involves terms that "are unreasonably favorable to the other party." *Id.* "Unconscionability is a narrow doctrine" that requires a plaintiff to show an "inequality . . . so gross as to shock the conscience." *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001).

Galloway argues the agreement is substantively unconscionable. Clearly, Priority included this waiver in the Buyer's Order because it favored Priority. But Priority did not hide the provision in the contract such that Galloway would not notice it, the provision requires both parties to submit their disputes to arbitration,[5] and the provision shifts certain costs of arbitration to Priority. Galloway has not raised any questions of fact that might lead the Court to conclude that the contract is one that "no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other." *Chaplain v. Chaplain*, 54 Va. App. 762, 773, 682

---

[5] Notwithstanding the requirement to arbitrate, both parties "retain the right to self-help remedies such as repossession." (Dk. No. 11-2 at 2.)

S.E.2d 108, 113 (2009). Thus, the provision is not substantively unconscionable, and the Court does not need to hold an evidentiary hearing to resolve this issue.

## 2. *VCPA*

The Virginia General Assembly intended for the VCPA to "be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197. In relevant part, the VCPA prohibits ""[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(A)(14). "To state a claim under the VCPA, a plaintiff must allege a fraudulent misrepresentation of fact. An allegation of a misrepresentation of fact 'must include the elements of fraud: a false representation, of material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage.'" *Jefferson v. Briner Inc.*, No. 3:05-cv-652, 2006 WL 1720692, at *9 (E.D. Va. June 21, 2006) (quotations and citations omitted).

Galloway alleges that Priority deceived Galloway by "engineer[ing] the arbitration clause in the Buyer's Order in such a manner that it effectively allowed Priority to avail itself of the judicial system to resolve any disputes it may have had regarding the car sale, while effectively barring Ms. Galloway from asserting her federal statutory rights or full punitive damages in a judicial system." (Dk. No. 11, ¶ 137.) Galloway, however, has not pointed to any false representation, deception, or fraud in the agreement itself. Rather, the agreement clearly states the rights Galloway waived by entering into the contract.

Galloway also has not pointed to any court decision in which the enforceability of an arbitration agreement turned on the *intent* a party had for including the agreement in the contract.[6]

---

[6] For this reason, the Court also declines to hold a hearing under the FAA.

9

Moreover, Virginia courts often recognize punitive damages waivers as valid, and they enforce arbitration agreements despite such waivers. *See Lovelady*, 2018 WL 3580768, at *10. Thus, the arbitration provision does not violate the VCPA and does not raise factual questions requiring an evidentiary hearing.

### III. CONCLUSION

For the reasons stated in this Opinion, the Court will grant Priority's motion to dismiss and to compel arbitration, and it will dismiss this case without prejudice.[7] The Court declines to hold an evidentiary hearing.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 12 December 2019
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge

---

[7] "A court may dismiss or stay a suit that is governed by the FAA." *Chronister v. Marks & Harrison, P.C.*, No. 3:11-cv-688, 2012 WL 966916, at *2 (E.D. Va. Mar. 21, 2012). "The law remains unsettled as to whether a court should stay or dismiss a case when all claims are subject to arbitration, but no question exists that the Court has the discretion to take either option." *Quality Plus Servs., Inc. v. AGY Aiken LLC*, No. 3:16-cv-727, 2017 WL 2468792, at *6 (E.D. Va. June 7, 2017). Because all of Galloway's claims are subject to arbitration, the Court will exercise its discretion to dismiss this case without prejudice.

10